## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

NATHAN M. MCKINLEY,

        Plaintiff,

v.                                                          Case No.  8:05-cv-113-T-TBM

JO ANNE B. BARNHART,
Commissioner of the United States
Social Security Administration,

        Defendant.

_____/


## O R D E R

    The Plaintiff seeks judicial review of the denial of his claim for Social Security

disability benefits.  For the reasons set out herein, the decision is affirmed.


## I.

    Plaintiff was sixty-two years of age at the time of his administrative hearing.  He

stands 5', 10" tall and weighed approximately 225 pounds.  Plaintiff has a high school

education and one year of college.  His past relevant work was as a real estate agent.  Plaintiff

applied for disability benefits in December 2001, alleging disability as of March 15, 1984, by

reason of loss of mobility, strength, and constant lower back pain.  At the hearing, Plaintiff

amended his alleged onset date to January 1, 2000.  Plaintiff's application was denied

originally and on reconsideration.

    The Plaintiff then received a *de novo* hearing before an Administrative Law Judge

(hereinafter "ALJ") where he was represented by counsel.  In essence, Plaintiff claimed that

he could no longer work at any job because of his lower back pain and soreness.  He was

injured on the job with a trucking company in 1984 and claims that he suffered two ruptured disks or degenerative disks in his lower back.  He testified that his degenerative back condition causes sharp, continuous pain in his lower back.  While his medication helps, activity increases his back pain.

Plaintiff has had his real estate license since the mid-1980s, but he claims that he has never worked on a full-time basis as a realtor.  He does not plan to renew his real estate license.  The physical activities associated with being a real estate agent such as walking through and inspecting properties prevent him from putting the necessary hours into this job to make money.  He works part-time at the Greater Tampa Bay Auto Auction approximately fourteen to sixteen hours per week moving, driving, and preparing cars for the auction.  He has worked at the auto auction for two years.  Plaintiff stated that he cannot work forty to fifty hours each week at this job because of his back problems.  The job requires him to walk a lot and repeatedly get in and out of cars which is difficult with his back injury.

According to Plaintiff, his ability to sit, stand, and walk varies from day to day.  On some days, he can walk ten feet and other days, a half a mile, though not very often.  On some days, he can stand and sit comfortably without leaning on something for support for two minutes and on other days, for thirty minutes before the pain increases in his lower back.  Plaintiff testified that he can lift a gallon of milk and that doctors suggested he not lift anything over twenty pounds.  He drives approximately one hundred miles per week to his place of employment, the grocery store, the mall, and the post office.  Plaintiff takes pain medication as needed two to three times per week, but this medication causes nausea and stomach pains, which can last into the next day.  He claims the prescription Motrin he takes causes diarrhea that lasts for several hours.  He takes Accupril for his blood pressure, which

2

he thinks causes frequent urination.  Additionally, he complains of dizziness and ringing in his ears.  In addition to his back pain, Plaintiff complains that he experiences numbness of the feet and toes which he describes as an annoyance.  Plaintiff also claims that he experiences problems with the feet and legs because he walks differently than he used to.  Plaintiff consumes six to twelve alcoholic drinks a week.  <u>See</u> Plaintiff's testimony (R. 34-52, 56-57).

The ALJ also took testimony from Teresa Manning, a vocational expert (hereinafter "VE").  Upon the assumption of an individual of Plaintiff's age, education, and work experience, with the capacity for a restricted range of light work activity, restricted by the need to alternate sitting and standing, the VE testified that Plaintiff could perform either as a realtor or as a auto auction driver.  Upon a further assumption that such person would need unscheduled breaks up to fifteen times a day to utilize bathroom facilities, the VE testified such limitation would preclude the jobs.  The VE testified that Plaintiff acquired readily transferable skills as a realtor for the usage of office equipment, mathematics, and selling to include communication skills[1] that would allow him to perform other jobs such as teacher's aide, case aide and unit clerk.  These jobs would also be precluded if the person would need unscheduled breaks up to fifteen times a day to utilize bathroom facilities.  <u>See</u> VE's testimony (R. 52-56, 57-59).

Also before the ALJ were medical records outlining the Plaintiff s medical history. These matters are addressed adequately by the parties' memoranda and are addressed herein as necessary.

---

[1]In a past relevant work summary prepared by the VE, she identified selling, researching, usage of office equipment, and knowledge of laws and mathematics as the acquired skills.  (R. 129).

By his decision of September 3, 2003, the ALJ determined that while Plaintiff has severe impairments related to hypertension, obesity, and lumbar disease, he nonetheless had the residual functional capacity to perform a wide range of light work except that he cannot engage in any repetitive bending, stooping, crawling, or climbing and must be allowed to alternate between sitting and standing.  Upon this finding and the testimony of the VE, the ALJ concluded that Plaintiff could perform jobs available to him in the local and national economy.  Upon this conclusion, the Plaintiff was determined to be not disabled.  (R. 11-19).  The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).  A "'physical or mental impairment,'" under the terms of the Act, is one that   results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  Id. at § 423(d)(3).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  See id. at § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Miles v. Chater, 84 F.3d

4

1397, 1400 (11th Cir. 1996).  The Commissioner must apply the correct law and demonstrate that she has done so.  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions.  Keeton v. Dep't of Health & Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994) (citing Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991)).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  Celebrezze v. O'Brient, 323 F.2d 989 (5th Cir. 1963). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to re-weigh the evidence, but is limited to determining whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.  Miles, 84 F.3d at 1400; Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983).

The scope of review is limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

III.

The Plaintiff raises two claims on this appeal.  As stated by the Plaintiff, they are as follows:

5

(1) The Commissioner erred in finding that the Plaintiff was able to perform other work in the national economy; and

(2) The Commissioner failed to adequately consider all of the evidence and, consequent to this failure, failed to accurately find upon the Plaintiff's credibility.

By his first claim, Plaintiff contends that at all times pertinent to the decision, he was either a person of advanced age (age fifty-five or older) or approaching retirement age (age sixty to sixty-four).[2]  Accepting that the ALJ's residual functional capacity assessment was correct, he nonetheless urges that the ALJ's assessment of the transferability of his skills was incorrect, and the conclusion that he could perform work in the national economy was flawed. As reflected in the transcript of the administrative hearing, the VE the Plaintiff acquired the skills of usage of office equipment, mathematics, and selling to include communication skills in his past work as a realtor. Moreover, he testified that these skills were readily transferable to other work as a teacher's aide, unit clerk, and case aide.  Citing the Social Security Program Operations Manual System (hereinafter "POMS"), SSR 82-41, and <u>Draegert v. Barnhart</u>, 311 F.3d 468 (2d Cir. 2002), Plaintiff argues that the "skills" assessed by the VE were not skills at all, but instead aptitudes.  In any event, there was no adequate showing how they would facilitate entrance into and performance of the new positions identified by the VE, or how they would provide an advantage to an older worker in the new positions.

Insofar as Plaintiff contends that the identified skills were not skills at all but aptitudes, the very authority cited by the Plaintiff reveals otherwise.  In <u>Draegert</u>, the court,

---

[2]Plaintiff was born on November 24, 1940.  He was fifty-nine years old as of his alleged onset date, as amended; sixty-one years old as of the date he applied for benefits; and sixty-two years old at the time of the administrative hearing and on the date of the ALJ's decision.

quoting a Sixth Circuit decision,[3] stated:

> An 'aptitude is an 'inclination, a natural ability, talent, or capacity for learning.' A 'skill' is a 'learned power for doing something competently.' *Webster's Ninth New Collegiate Dictionary.* In short, an aptitude is an innate ability while a skill is a learned ability.

Id. at 475. In my view, selling, researching, usage of office equipment, knowledge of laws and mathematics are learned abilities for doing something competently, rather than innate or natural talents or abilities.[4] Plaintiff also complains that there was no adequate showing of transferability. Under SSR 82-41, "transferability" means "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semi-skilled jobs." Plaintiff suggest that more was required on this issue than was done here.

Here, VE identified specific acquired skills and testified that such skills as were acquired were readily transferable. By his testimony, "readily" was defined as "little if any adjustment." (R. 59). Even assuming that the POMS cited by Plaintiff was binding on the ALJ, it appears the ALJ here correctly assessed the matter of transferability. Thus, under the POMS, when a person is between 60 and 64 and has a severe impairment that limits him to light work, transferably will be found only if the light work is so similar to the person's

---

[3]Weaver v. Dep't of H.H.S., 722 F.2d 310, 312 (6th Cir. 1983).

[4]No different conclusion is called for under SSR 82-4. There, it states:
> A 'skill' is knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through the performance of an occupation. . . . It is practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.

Id.

previous work that he would need to make little, if any vocational adjustment in terms of work processes, settings, or the industry.  Under the POMS, complete similarity of skill sets is not required, in fact it is recognized that there are degrees of similarity from very close to remote.  DI 25015.015.  Moreover, the VE had access to the administrative filings by the Plaintiff as well as his testimony and twice opined on the acquired skills Plaintiff obtained from his work as a realtor.  These opinions, as well as his testimony on transferability, were subject to the examination of Plaintiff's counsel.  As reflected in the record, counsel made no issue of this testimony except to inquire whether the acquired skills were readily transferable.  (R. 58-59).  In my view, the ALJ was not required to do more in these circumstances and could rely upon the expert testimony in reaching his conclusion on disability.  Stated otherwise, even if it is correct that the ALJ could have done more on this issue, what was done appears to provide substantial evidence to support the decision.

On his second claim, Plaintiff initially argues that the ALJ's credibility determination was based on erroneous conclusions from the record that there were gaps in medical care, particularly between 1985 and 1995.  He urges that new and material evidence showing treatment during this period and afterward submitted to the Appeals Council should have prompted the Appeals Council to remand the case for further consideration by the ALJ.  Plaintiff also complains that his credibility should not have been "devalued" by testimony concerning his daily activities.

As set forth above, Plaintiff maintains that he is unable to work full-time at any job due to constant back pain and soreness which is aggravated by activity.  Among other reasons the ALJ cited in discounting Plaintiff's pain complaints, the ALJ stated:

> . . . although the claimant has complained of constant back
> pain since 1984, he has sought the services of a physician
> only sporadically.  He first saw Dr. Castellvi two months

8

> after the date he injured his back. The record indicates
> treatment with Dr. Castellvi on a somewhat consistent basis
> from May 1984 to August 1985, but this period is followed
> by a ten-year gap in treatment.  Even more, the medical
> records indicate that on September 29, 1995, the claimant
> showed up late for his appointment and then left without
> being seen because he did not want to wait (Exhibit 4F, 21).
> Then, there is a three-year gap in treatment, from 1995-1998.
> Afterwards, the pattern continues with a four-year gap
> culminating in treatment in 2002.

(R. 14).  The record reflects that subsequent to the hearing, but prior to the decision, Plaintiff submitted to the ALJ updated records from his chiropractor, Terry Magdovitz, and from the Apollo Beach Family Practice.  (R. 235-53).  In October 2004, after the decision, Plaintiff submitted to the Appeals Council an addendum to his "exceptions" to the decision.  By this submission, he challenged the credibility determination and included a statement by Dr. Magdovitz that he had treated Plaintiff an estimated 500 times during the period from 1985 to 1998, some charge tickets reflecting some treatment from Dr. Castellvi in 1986 and 1987, as well as prescription records from 1990 to September 2003.  (R. 261-78).  As noted above, the Appeals Council reviewed Plaintiff's claims of error and the additional evidence but denied his request for review.  (R. 4-5).

In this circuit, a remand for consideration of new evidence is appropriate where the Plaintiff demonstrates that: "(1) there is new, non-cumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." Vega v. Comm'r of Soc. Sec., 265 F.3d 1214, 1218 (11th Cir. 2001) (quoting Caulder v. Bowen, 791 F.2d 872, 877 (11th Cir. 1986), and citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998)).

I agree with Plaintiff that such records as were submitted would undermine the conclusion that he had a ten-year gap in treatment between 1984 and 1995. However, when the record is considered as a whole, a remand is simply not warranted and the Appeals Council made no error in reaching the same conclusion. First, it would appear that Dr. Castellvi has no other records for the period between 1987 and 1995 that could be reviewed, and Plaintiff has not demonstrated by any other means, such as a statement by the doctor, that those records are material as that term is used under the new evidence standard. Further, a review of Dr. Castellvi's records from 1984 and 1995 forward simply do not support a disabling orthopedic injury either before or after the alleged onset date in January 2000. The Appeals Council did not err in not remanding the case to the ALJ for further review of this doctor's records.[5]

A similar conclusion is reached concerning Dr. Magdovitz note that he had seen Plaintiff an estimated 500 times between 1985 and 1998. While the note may undermine part of the reasons the ALJ concluded Plaintiff was not fully credible, I can not make the necessary materiality finding even if the note is considered new evidence, and there is good

---

[5]A report of a CT scan of the lumbar spine in November 1984, was negative. In a letter to Plaintiff's attorney, the doctor noted his belief that Plaintiff had a minor degree of permanent impairment, but he also stated, "He is working at his own business and is able to do this." (R. 159). In September and again in October 1995, Dr. Castellvi noted Plaintiff could resume his regular job without restrictions. (R. 163-64). Again, in late October, the doctor noted Plaintiff could return to unrestricted activity. (R. 151). Despite Plaintiff's protests to the contrary, the doctor's records do suggest gaps in treatment between 1995 and 1998 and a four-year gap in treatment between 1998 and 2002. (R 145-65). In the last note in June 2002, the doctor recommended Plaintiff take Motrin and continue exercising at home. During no relevant period do these doctor's records support the conclusion that Plaintiff was functionally impaired beyond the degree determined by the ALJ. Even the new records cast doubt on the need for a remand. In an undated note which references an inquiry on February 3, 1987, the doctor indicated he had released Plaintiff in November 1986 with an appointment in six months, no surgery was planned, and while he had a disability of 10%, his prognosis was good. (R. 265).

cause for failing to introduce the records from this period at the hearing.[6]  The same conclusion follows for the list of prescriptions filled during this period.

Plaintiff also complains that the ALJ should not have "devalued" his credibility by reason of his daily activities.  The decision reveals the ALJ's review of both the medical record as well as Plaintiff's administrative filings.  In his review of those filings, the ALJ cited some of the daily activities indicated by the Plaintiff, which he believed supported a conclusion that Plaintiff could perform light work.  (R. 15).  I can find no error in this review by the ALJ. The fact that Plaintiff continued to work on a part-time basis as a driver at an auto auction, was capable of and did drive to the supermarket, mall, work, and elsewhere, can repetitively lift a gallon of milk, and exercises regularly by walking and lifting weights are relevant considerations to his claim of total disability.  Thus, given the Plaintiff's claims of disabling low back pain, consideration of his daily routine was entirely appropriate and consistent not only with the regulations, but applicable case law.  See Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1520(b), (e).

A fair reading of this decision reflects that Plaintiff's claims of disabling impairments or symptoms were discounted chiefly because the medical record failed to support the claims.  I find these records were fairly considered as were the other factors cited

---

[6]A review of the records from this doctor reveals chiropractic treatment for low back pain in June 1985.  The records pick up again in January 1998 and reveal continuous chiropractic treatment, generally on a monthly basis, through at least May 2003.  The records indicate conservative "supportive care" for the complaints of pain.  As for objective findings, x-rays from January 2001, revealed degenerative changes of anterior spondylosis and moderate facet degenerative changes at L5-S1.  (R. 173).  In a June 17, 2002, letter, while acknowledging the pain complaints, the doctor noted that Plaintiff would be unable to lift over twenty pounds and could not stand or sit for prolonged periods.  Otherwise, the doctor's records suggest conservative care for complaints of low back pain.  It is difficult, if not impossible, to conclude from a review of these extensive notes that the addition of other similar notes from an earlier period could make any difference in the decision that was reached in this case or that a remand is necessary.

11

by the ALJ in accordance with the applicable standards.  Thus, no relief is warranted on the basis of the ALJ's credibility determination.

Plaintiff also contends that he alleged and the decision recognizes a severe impairment related to obesity, yet the ALJ failed to otherwise address the condition or any limitations it caused.  He further urges that the ALJ failed to incorporate any reference to the obesity in his hypothetical questioning of the VE.

Plaintiff is correct that the Act and pertinent case law require that the ALJ consider each impairment, as well as the combined effect of all a claimant's impairments.  42 U.S.C. § 423(d)(2)(B); Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986).  In Bowen v. Heckler, 748 F.2d 629 (11th Cir. 1984), the court held that where a claimant has alleged a multitude of impairments, a claim for benefits may lie even though none of the impairments, when considered individually, is disabling.  In such instances, the ALJ must make specific and well-articulated findings as to the effect of the combination of impairments and whether the combined impairments cause the claimant to be disabled.  Id. at 635; Walker v. Bowen, 826 F.2d 996, 1001 (11th Cir. 1987).  Plaintiff is also correct that case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant.  Pendley v. Heckler, 767 F.2d 1561 (11th Cir. 1985).  Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence.  Id. at 1562 (quoting Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980)).  However, Plaintiff fails to demonstrate that either standard was violated in this case.

As the Plaintiff concedes, the ALJ considered obesity to be a severe impairment. Beyond this, express statements by the ALJ indicate that he understood his obligation to

12

consider all Plaintiff's impairments in combination.  <u>See</u> (R. 12, 13, 18).  Additionally, I find

that a fair reading of the ALJ's review of the medical records suggests that all the conditions

were considered insofar as they were revealed by the medical record.  Even if Plaintiff is

correct that the ALJ did not identify specific limitations in connection with obesity, my

review of the medical record indicates that the ALJ fairly assessed Plaintiff's functional

limitations regardless of there source.  Further, I cannot overlook that Plaintiff himself made

no claim to the ALJ of any specific limitations by reason of his weight.  Instead, Plaintiff

testified that he was left disabled by reason of low back pain and soreness and a claim that his

medication resulted in a variety of side effects.[7]

I cannot find from a review of the medical records that any doctor has specified any

specific limitation in connection with Plaintiff's weight either.  Further, Plaintiff was

represented by competent counsel at the administrative hearing.  Counsel was given a full

opportunity to present his client's position and to examine the VE.  As the record reveals,

counsel made no claim of specific limitations related to obesity, either.  While an ALJ is

obliged to fully incorporate all limitations in his hypothetical questions of a VE, there is no

obligation for an ALJ to include unsupported subjective complaints in a hypothetical.  <u>Hunt v.</u>

<u>Massanari</u>, 250 F.3d 622, 625 (8th Cir. 2001).  Significantly, on this appeal, Plaintiff makes

no claims of a specific limitations related to his obesity that should have been considered by

the ALJ and included in any hypothetical questioning of the VE.  In these circumstances,

there is no grounds to require a remand on this basis.

---

[7]Plaintiff makes not claim on this appeal that the ALJ did not fairly address the side
effects of his medication.  Nonetheless, they were addressed and discounted on the basis of a
lack of record support.

13

IV.

For the foregoing reasons, the decision of the Commissioner of the United States Social Security Administration is in accordance with the correct legal standards and is otherwise supported by substantial evidence.  The decision is affirmed.  Accordingly, the Clerk is directed to enter Judgment in favor of the Defendant and to close the file.

**Done and Ordered** at Tampa, Florida, this 13th day of February 2006.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record